**HOSPITAL KLEAN OF TEXAS, INC., Plaintiff,**

v.

**UNITED STATES of America Defendant,**

and

**Integrity Management Services, Inc., Intervenor.**

**No. 05–495C.**

United States Court of Federal Claims.

Filed Under Seal May 17, 2005 [1].

Reissued: May 24, 2005.

Johnathan M. Bailey, Bailey & Bailey, P.C., San Antonio, Texas, for Plaintiff.

Lauren Moore, U.S. Department of Justice, Washington, D.C., for Defendant. Major Frank March, U.S. Army Legal Services Agency, Arlington, VA, Of Counsel, for Defendant.

Katherine S. Nucci, Thompson Coburn, LLP, Washington, D.C. for Intervenor.

## MEMORANDUM OPINION ENTERING TEMPORARY RESTRAINING ORDER

WILLIAMS, Judge.

In this post-award bid protest, Plaintiff, Hospital Klean of Texas, Inc. (HKI), lodges

---

**1.** This opinion was issued under seal on May 17, 2005. The Court invited the parties to submit proposed redactions by May 23, 2005. No re- dactions having been received, the court publishes this opinion *in toto,* correcting errata.

three challenges to the Army's award of a contract for hospital housekeeping services to Integrity Management Services, Inc. (Integrity).[2] First, HKI claims Integrity's modified proposal was received late and should not have been accepted. Second, HKI claims that the best value decision underlying this award was flawed. Finally, HKI claims that the agency unreasonably evaluated Integrity's quality control program.

This matter comes before the court on Plaintiff's application for a temporary restraining order (TRO). This opinion memorializes an oral ruling granting the TRO issued on April 28, 2005. Plaintiff has demonstrated: (1) that it is likely it can prove that the Army committed a prejudicial violation of procurement regulation by awarding a contract to an offeror whose proposal was late; (2) Plaintiff will be irreparably harmed absent a temporary restraining order since contract performance by an ineligible offeror will commence on May 1, 2005; and (3) Plaintiff will have been deprived of a fair opportunity to compete for the contract. The equities are balanced in favor of such relief. Defendant has been securing the needed services during pendency of the GAO protest under a bridge contract which was not scheduled to expire until June 30, 2005, but terminated that contract for convenience once GAO's automatic stay was lifted. There is no impediment to the Government continuing to procure these services under a similar contractual vehicle during the period of this TRO. The public interest will be served by allowing the protest process to proceed and to preserve a meaningful remedy in the event Plaintiff ultimately prevails.

### Procedural History

This action was filed under seal on April 25, 2005, and a Protective Order was issued on that date. Integrity intervened on April 26, 2005. The court convened a telephonic hearing on April 27, 2005, to hear argument on Plaintiff's application for a TRO, and orally granted the application on April 28, 2005. No administrative record had yet been filed with the Court, but in order to rule on Plaintiff's application, the Court *sua sponte* requested and received: 1) the Government's May 14, 2004, e-mail extending the proposal deadline until Saturday, May 15, 2004; 2) the source selection decision underlying the award; 3) the GAO's decision denying HKI's protest; 4) the bridge contract under which HKI, the incumbent, had been performing pending resolution of the GAO protest; 5) Government documents referencing and explaining the termination for convenience of the bridge contract; and 6) Federal Express' March 31, 2005, letter to Integrity indicating its attempt to deliver Integrity's proposal.

### *Findings of Fact* [3]

This was a best value procurement. The solicitation contemplated award of an indefinite-delivery, indefinite-quantity, fixed unit-price contract for hospital housekeeping services at Fort Polk, Louisiana. The base period was to run from November 1, 2004 to December 30, 2005, with four one-year options.

The due date for written proposals was originally May 14, 2004, at 1:00 p.m. The agency issued five amendments prior to the scheduled closing. Amendment No. 5, issued on Thursday, May 13, 2004, included revisions in the quantity of work under several contract line item numbers and included new wage and fringe benefit rates. On Friday, May 14, 2004, following several requests from potential offerors, the agency, via an e-mail, extended the closing date to Saturday, May 15, 2004, at 1:00 p.m. The agency's e-mail provided: "Closing date is extended til 1:00 pm Central Standard Time on Saturday the 15th of May 2004. If you have any questions please contact Sharyl Carlson [the contract specialist] at 210–221–3179 or Maria

---

2. HKI initially protested this award at the Government Accountability Office (GAO), and GAO denied the protest on April 18, 2005.

3. The findings of fact supporting the entry of this TRO are based upon the six documents filed by the parties at the Court's request listed above, and the representations of the parties during the

telephonic conferences of Apr. 27, 2005 and April 28, 2005, that the facts recited herein are uncontested. *See* Tr. (Apr. 27, 2005) *passim;* tr. (Apr. 28, 2005) at 4–12. All references to the transcript in this decision are to the April 27, 2005, proceeding, unless otherwise noted.

Moncada [the contracting officer] at 210–221–3805." Letter to Judge Williams from Counsel for Intervenor (Intervenor's Letter) dated Apr. 27, 2005, Attachment.

Integrity shipped its proposal to the agency in Fort Sam Houston, Texas via Federal Express (Fed Ex) on Friday, May 14, 2004, from Nipomo, California. According to the Fed Ex USA Airbill, Integrity requested "Express Package Service, Priority Overnight" and "Special Handling, Saturday Delivery." Intervenor's Letter dated Apr. 27, 2005, Attachment. This Fed Ex airbill did not contain the phone number or names of the intended recipient or government personnel identified in the agency's May 14 e-mail. *Id.* Nor did this airbill specify the time of day by which delivery was to be effected. *Id.*

Federal Express attempted delivery of Integrity's proposal on Saturday, May 15, 2004, at 8:47 a.m., "but nobody was in to accept delivery," and the agency's doors were locked. Letter from Fed Ex to Intervenor dated Mar. 31, 2005; tr. at 19, 37. According to a contracting officer's supplemental statement recounted in the GAO decision "someone was supposed to be listening for the expected Federal Express deliveries, but never heard the knock." *Hospital Klean of Texas, Inc.,* B–295836 (April 18, 2005) (GAO Decision) (slip op. at 2.) There is no evidence in the record suggesting that Fed Ex attempted delivery again on Saturday or telephoned the agency to attempt to gain entry to deliver the proposal. Tr. at 15–16, 19–20, 22–23. However, a proposal from Main Building Maintenance was timely delivered to this building at 11:19 a.m. on that date via hand delivery, and Plaintiff's proposal was timely delivered the day before.

The agency received Integrity's proposal and those of two other offerors from Fed Ex at 8:28 a.m. on Monday, May 17, 2004, as well as the proposal of one other offeror at an undocumented time, all after the closing date. Intervenor's Letter, Attachment; tr. at 25.[4] It is uncontroverted that these proposals were late. *Id.* at 13–14. The agency determined, however, that all of the proposals received on May 17, 2004, would be considered timely.

The solicitation provided for award based upon four technical factors, past performance and price. The technical factors were: "onsite work execution, quality control, business experience and technical management transition," and were all equal in importance. The technical factors, when combined, were slightly more important than past performance. The technical factors and past performance, when combined, were significantly more important than price.

The agency evaluated six proposals. HKI and Integrity both received overall technical ratings of good and past performance of low risk. On December 22, 2004, the agency awarded the contract to Integrity. On January 26, 2005, a debriefing was provided to HKI and on the same day, HKI filed a bid protest with GAO. Because the award was automatically stayed pending GAO's resolution of the protest, the Army awarded a "bridge contract" to secure these critical services during the pendency of the protest. The bridge contract was awarded to HKI on April 1, 2005, and covered a performance period through June 30, 2005. Letter to Judge Williams dated April 27, 2005, from Counsel for Defendant (Defendant's Letter), Enclosure.

On April 18, 2005, GAO issued its decision denying the protest, and the agency terminated the bridge contract for convenience on April 21, 2005, with an effective termination date of May 1, 2005. *Id.* This protest was filed on April 22, 2005, and Integrity's performance of the challenged contract was scheduled to commence on May 1, 2005. Tr. at 4.

### Discussion

#### Jurisdiction and Standard of Review

The Court has jurisdiction over this bid protest pursuant to the Tucker Act, 28 U.S.C. § 1491(b)(1). In a bid protest action, the Court reviews the defendant's decision under the standards in the Administrative Procedure Act (APA), 5 U.S.C. § 706; 28 U.S.C. § 1491(b)(4). The APA directs a reviewing court to overturn agency actions that

---

4. There was an additional late offer whose delivery time was not established. Tr. at 25.

are arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). In order to prevail, the protestor must show by a preponderance of the evidence that the agency's actions were either without a reasonable basis or in violation of applicable procurement law. *Gentex Corp. v. United States,* 58 Fed. Cl. 634, 648 (Fed.Cl.2003) *quoting Information, Technology and Applications Corp. v. United States,* 51 Fed. Cl. 340 (2001), *aff'd,* 316 F.3d 1312 (Fed.Cir.2003) (*ITAC*) (internal citation omitted). To prevail, the protestor must show not only a significant error in the procurement process, but also that the error prejudiced it. *Data General Corp. v. Johnson,* 78 F.3d 1556, 1562 (Fed.Cir.1996) *citing LaBarge Prods., Inc. v. West,* 46 F.3d 1547, 1556 (Fed.Cir.1995).

### Standards for Entering a TRO

▇▇▇ In deciding whether temporary injunctive relief should issue, a court considers: (1) whether the plaintiff is likely to succeed on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief. *PGBA, LLC v. United States,* 389 F.3d 1219, 1228–29 (Fed.Cir. 2004). No one factor is dispositive, and "the weakness of the showing of one factor may be overborne by the strength of others." *Gentex,* 58 Fed. Cl. at 654, *quoting FMC Corp. v. United States,* 3 F.3d 424, 427 (Fed. Cir.1993). At the TRO phase of a bid protest, because the application must be resolved immediately—in this case just three days after the filing of the lawsuit—the record is necessarily truncated. The purpose of a TRO in a post-award bid protest is to stay the award of a challenged contract until the court can determine its validity.

### Likelihood of Success on the Merits

### Did Plaintiff Demonstrate that it is Likely that the Army Improperly Accepted a Late Proposal?

▇▇▇ In considering whether to grant interim injunctive relief pending a final decision on the merits, the Court of Federal Claims has recognized that likelihood of success is a flexible factor. *E.g., Magellan Corp. v. United States,* 27 Fed. Cl. 446, (1993) ("it is not fatal to Magellan's effort to obtain interim relief … that it cannot demonstrate a 'significant' or 'strong' likelihood of success."). Here it is uncontroverted that the awardee's proposal was not received until May 17, 2004, two days late. The only question is whether the agency properly accepted the late proposal under the theory that the agency mishandled the offers or gave vendors inadequate instructions, thus making timely delivery impossible.

While the FAR permits acceptance of late proposals under certain circumstances, none of those are met here. 48 CFR 15.208 in relevant part provides:

**15.208 Submission, modification, revision, and withdrawal of proposals.**

(a) Offerors are responsible for submitting proposals, and any revisions, and modifications, so as to reach the Government office designated in the solicitation by the time specified in the solicitation. Offerors may use any transmission method authorized by the solicitation (*i.e.,* regular mail, electronic commerce, or facsimile). If no time is specified in the solicitation, the time for receipt is 4:30 p.m., local time, for the designated Government office on the date that proposals are due.

(b)(1) Any proposal, modification, or revision that is received at the designated Government office after the exact time specified for receipt of proposals is "late" and *will not be considered* unless it is received before award is made, the contracting officer determines that accepting the late proposal would not unduly delay the acquisition; and—

(ii) There is acceptable evidence to establish that it was *received* at the Government installation designated for receipt of proposals and was *under the Government's control* prior to the time set for receipt of proposals;

48 C.F.R. § 15.208 (emphasis added).

Thus, under the terms of the FAR the contracting officer may not consider a late proposal unless there is acceptable evidence

to establish that it was *received* at the Government installation designated for receipt of proposals and was *under the Government's control* prior to the time set for receipt of proposals. Here, it is undisputed that Integrity's proposal was not received by the Government and was not in the Government's control by the time of closing.

The Comptroller General has on numerous occasions refused to apply this regulation requiring the rejection of late bids or offers. *E.g., Adirondak Constr. Corp.*, B280015.2, 98–2 CPD ¶ 55 at 3. As GAO explained in *Wyatt and Assocs.*, B–243349, 91–2 CPD ¶ 5 at 2:

> As a general rule, an offeror has the responsibility of assuring the timely arrival of its proposal at the place designated in the solicitation. However, a hand-carried offer that is received late may be accepted where improper government action was the paramount cause for the late delivery, and the integrity of the procurement process would not be compromised by acceptance of the offer. *St. Charles Travel*, B–226567, June 5, 1987, 87–1 CPD ¶ 575.

GAO expounded on its "paramount cause" rule in *Palomar Grading & Paving Inc.*, B–274885, 97–1 CPD ¶ 16 at 2:

> One of the fundamental principles underlying the rules for the consideration of late bids is that *a bidder who has done all it could and should to fulfill its responsibility* should not suffer if the bid did not arrive as required because the government failed in its own responsibility, and if that is otherwise consistent with the integrity of the competitive system. We therefore have held that a late hand-carried bid may be considered for award if to do so would not compromise the competitive system and either the government's "affirmative misdirection" made timely delivery impossible, *Select, Inc., supra*, or government mishandling after timely receipt by the agency was the sole or paramount cause for the bid's late receipt at the designated location. *AABLE Tank Servs., Inc.*, B–273010, Nov. 12, 1996, 96–2 CPD ¶ 180; *Kelton Contracting, Inc.*, B–262255, Dec. 12, 1995, 95–2 CPD ¶ 254.

In *Palomar*, GAO found that the government was the paramount cause of the late receipt of a hand-carried bid because instructions in the solicitation specified the wrong zip code for delivery of bids, and thus made it impossible for the bid to be timely delivered to the bid opening location. Unlike *Palomar*, there was no affirmative misdirection by the agency here which made timely delivery impossible, as is evidenced by the timely submission of another proposal the same day.

As GAO explained in *Bergen Expo Systems, Inc.*, B–236970, 89–2 CPD ¶ 540:

> A proposal delivered to an agency by Federal Express or other commercial carrier is considered to be hand-carried and, if it arrives late, can only be considered if it is shown that some government impropriety after receipt at the government installation was the paramount cause of the proposal's late arrival at the designated place. *Dakota Woodworks*, B–2331778, Jan. 12, 1989, 89–1 CPD ¶ 33. Improper government action is affirmative action that makes it impossible for an offeror to deliver its proposal on time. *Econ, Inc.*, B–222577, July 28, 1986, 86–2 CPD ¶ 119. A late proposal should not be considered, however, if the offeror or its agent contributed significantly to the late receipt by not acting reasonably in fulfilling its responsibility to deliver a hand-carried proposal to the proper place by the proper time, even though late receipt may have been caused in part by erroneous government action. *Monthei Mechanical, Inc.*, B–216624, Dec. 17, 1984, 84–2 CPD ¶ 675. In this regard, delays in gaining access to a government building are not unusual and should be expected. *Econ, Inc.*, B–222577, *supra*.

In *Bergen*, GAO held a proposal to be late where Federal Express had been denied entry to the submission site by a security guard and attempted redelivery but arrived 26 minutes late. Rather than waiting for the mailroom personnel authorized to accept the proposals who were contacted by the security guard, the Federal Express agent left after waiting 10–15 minutes. At 12:26 pm that same day, the Federal Express agent delivered the package—26 minutes late. GAO held that the submission was untimely and

that the late proposal should not be considered.

Here, the Federal Express courier's inability to gain access to the building at 8:47 a.m. was the reason the proposal was not delivered at that time. However, another proposal was delivered at 11:19 a.m., so access was available then. The fact that the agency's door was locked at 8:47 a.m. but open later that morning was not agency mishandling of the offer after receipt or affirmative misdirection. *See also Scherr Construction Co. v. United States,* 5 Cl.Ct. 249 (1984) (holding that the Government's failure to answer the telephone during normal business hours was not the paramount cause of a late proposal because subsequent action by Western Union (bidder's delivery agent) could have resulted in timely delivery); *Gulls, Inc.,* B–232599, 89–1 CPD ¶ 74 (holding that a bid that was delivered two minutes late could not be considered even though the front door of the Government installation was blocked by construction and the back of the building, where one of the workers finally told bidders to deliver the proposal, could only be accessed by a one-way street because bidder's failure to allow sufficient time to deliver the bid was the paramount cause).

In HKI's earlier protest against this award, GAO held that the CO was within her right to accept the late proposal from Integrity because "the agency's action was the paramount cause for the late delivery of the proposal revision on May 17." GAO explained:

> In this regard, the agency extended the closing to Saturday, May 15, but failed to establish adequate procedures to ensure that reasonable attempts to deliver hand-carried proposals prior to closing would be received at the place designated for delivery. Specifically, Saturday was not a normal business day for the agency and the doors to the agency were locked. The agency did not post instructions outside the locked door stating that agency personnel would be present to receive deliveries, or how to contact them. Therefore, when a courier attempted to enter the locked doors and received no response from within, it was reasonable for the courier to assume that delivery at that address of Saturday was not possible.

GAO acknowledged that one offeror did deliver its proposal on Saturday prior to the closing time, stating:

> while the record shows that Saturday delivery was possible at other times on that day (as evidenced by the single proposal that the agency did receiv., on that day) delivery was impossible *at the time* Federal Express attempted to deliver Integrity's proposal revision (as evidenced by the note left on the locked door by Federal Express) ... Thus, GAO affirmed the CO's late acceptance of various proposals attributing the 'paramount cause of the late delivery' to agency action.

GAO Decision at 5 (emphasis added).

While this Court recognizes GAO's long-standing expertise in procurement law, it nonetheless takes a different view in this case, at least for purposes of this emergency application. The Court cannot conclude that because Federal Express could not deliver the proposal *at the single time* it attempted, the agency was the paramount cause of late delivery. In the Court's view, the record does not support a conclusion that Integrity, through its agent Federal Express, had "done all it could and should to fulfill its responsibility to deliver its proposal on time." *See Weeks Marine, Inc.,* B–292758, 03 CPD ¶ 183. Nor does the Court deem the agency's directive allowing for delivery of offers on Saturday to rise to the level of "affirmative misdirection" or inadequate procedures where the agency gave offerors the phone numbers of two contracting officials and was open for delivery of another offer on the date in question. GAO has recognized that even where an agency's actions are improper, a late bid is properly rejected where an offeror bears responsibility for late receipt. *Adirondak,* B–280015 at 4.

Here, Integrity and its agent Federal Express were not without fault in the tardy delivery of Integrity's proposal. First, there is no indication on the Federal Express slip informing the courier that delivery needed to be effected by 1 pm. Second, there is no indication that any effort beyond knocking on the locked door occurred to ensure deliv-

ery—such as calling Integrity or attempting to call the agency contracting officials identified in the e-mail extending the closing date. Finally, this record indicates that there was no attempt at redelivery that day.

Defendant and Intervenor point out that where the procedure by which submission of a proposal to be effected is flawed, lateness will be excused. However, this is not such a case. *See Sun International*, B–208,146, 83–1 CPD ¶ 78; *Palomar Grading & Paving, Inc.*, B–274,885, 97–1 CPD ¶ 16. Those cases involve instances where there are procedural defects in the RFP, such as indicating the wrong zip code for delivery. This is not a case where "the bidder's reasonable reliance on improper delivery instructions in the solicitation made it impossible for the bid to be timely delivered to the bid opening location." *Palomar*. To the contrary, the email that extended the deadlines for submission correctly indicated that the proposals would be received at the building at which Federal Express attempted delivery. That same email indicated that if there were any questions, bidders were to contact either the contracting officer or the contract specialist and gave their phone numbers. As such, based upon the record before the court at this juncture it is likely that HKI can demonstrate that Integrity's late proposal should not have been accepted.[5]

### Irreparable Harm

HKI argues that if injunctive relief does not issue, Hospital Klean will suffer the same harm in the form of lost profits that befalls every Plaintiff to a bid protest because a disappointed bidder cannot recover lost profits. *See* Pl.'s Mem. at 36. HKI is correct. When analyzing irreparable injury, "[t]he relevant inquiry in weighing this factor is whether plaintiff has an adequate remedy in the absence of an injunction." *Magellan Corp. v. United States*, 27 Fed. Cl. 446, 447 (1993); *see also Overstreet Elec. Co., Inc. v. United States*, 47 Fed. Cl. 728, 744 (2000); *Bean Dredging Corp. v. United States*, 22 Cl.Ct. 519, 524 (1991) (stating that absent injunctive relief, "plaintiffs could recover only bid preparation costs, not lost profits,

through an action at law"). Here, absent injunctive relief, HKI will lose the opportunity to earn the profit it would have made under this contract. Such loss of profit, stemming from a lost opportunity to compete for a contract on a level playing field has been found sufficient to constitute irreparable harm. *United Payors & United Providers Health v. United States*, 55 Fed. Cl. 323 (2003), (citations omitted); *MVM, Inc. v. United States*, 46 Fed. Cl. 137 (2000).

### Harm to Third Parties

No harm will inure to third parties since it is undisputed that the government has alternative contractual vehicles available through which it can continue to obtain the needed services uninterrupted.

### Public Interest

There is an overriding public interest in preserving the integrity of the procurement process by requiring the government to follow its procurement regulations. *Gentex*, 58 Fed. Cl. 634, 648; *Cincom Sys. v. United States*, 37 Fed. Cl. 266, 269 (1997) (*citing Magellan Corp. v. United States*, 27 Fed. Cl. 446, 448 (1993)).

On balance, the Court concludes that issuance of a Temporary Restraining Order is warranted at this time.

### The Bond

Rule 65(c) requires that Plaintiff post a bond in the event a TRO or preliminary injunction is issued. The rule provides:

> (c) Security. No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

The purpose of posting security was explained in *Allen Campbell Co. v. United States*, 199 Ct.Cl. 515, 467 F.2d 931, 934–35 (1972) (Nichols, J. concurring):

> I suggest that trial courts should make their interventions "circumspect and infrequent", in the Fifth Circuit's phrase. 446

---

5. The Court does not reach Plaintiff's challenges to the Army's best value assessment and evalua-

tion, given its conclusion regarding Integrity's late bid.

F.2d, at 264. Circumspection would include requiring an unsuccessful bidder, when plaintiff, to post security guaranteeing to make good any loss to any party that judicial interference may cause, if it is not ultimately upheld. Courts that do not observe these precautions will sometimes leave wounds the Court of Claims will be in no position to heal.

In the instant case, the "wounds" potentially inflicted on the Government by the improvident grant of a restraining order would constitute increased costs of performance under the bridge contract for the period of the 20-day TRO as well as the costs the Government would owe Integrity in conjunction with terminating its performance, amounting to $2,674. Tr. (Apr. 29, 2005) at 8–12.

### *Temporary Restraining Order*

1. Defendant, United States of America, the Army, and Intervenor, Integrity Management Services and their officers, agents, servants, employees and representatives, including Contracting Officer Barbara M. Peterson, U.S. Army Medical Command Center for Health Care Contracting, Fort Sam Houston, Texas, and all persons acting in concert and participating with them respecting the subject procurement, be and they are hereby TEMPORARILY RESTRAINED AND ENJOINED from performing the contract awarded to Integrity Management Services, Inc. on Dec. 22, 2004 under Solicitation No. W81K04–04–R–0009 for the hospital housekeeping services at Fort Polk, Louisiana for a period of 10 days.

2. Plaintiff shall post a bond, with a surety authorized by the Secretary of Treasury in the amount of $2,674.00, in accordance with RCFC 65 and 65.1. *See* RCFC 65(c), 65.1. If the Plaintiff has any questions about the proper procedure for securing a bond, it may contact the Clerk's office at (202) 357–6400.

3. The parties agreed that the TRO would be converted into a Preliminary Injunction and remain in effect until May 20, 2005, to enable the parties to brief this matter and the court to issue a final ruling by that date.

4. The Court adopts the following schedule in this protest:

| | |
|---|---|
| May 3, 2005 | Defendant shall file the Administrative Record. |
| May 9, 2005 | Defendant and Intervenor shall file their oppositions to Plaintiff's Motion for a Permanent Injunction and In Support of their Motions for Judgment on the Administrative Record. |
| May 16, 2005 5:00 p.m. ET | Plaintiff shall file its Reply to Defendant's and Intervenor's Briefs. |
| May 19, 2005 11:00 a.m. ET | The Court will hear oral argument telephonically. |
| May 20, 2005 | The Court will rule orally on Plaintiff's Motion for a Permanent Injunction and the parties' motions for Judgment on the Administrative Record. |

5. The parties shall file proposed redactions to this Memorandum Opinion no later than **May 19, 2005.**