PGBA, LLC, Plaintiff,

v.

UNITED STATES, Defendant,

Wisconsin Physicians Service Insurance Corporation, Intervening Defendant.

No. 03–2773–C.

United States Court of Federal Claims.

May 12, 2004.

---

Kathleen E. Karelis, Miller & Chevalier Chartered, Washington, D.C., for plaintiff. W. Jay DeVecchio, Robert K. Huffman, Lisanne E.S. Cottington, Edward Jackson, and Jeffrey C. Walker were of counsel.

Kyle Chadwick, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Assistant Attorney General Peter D. Keisler, David M. Cohen, Director, and Brian M. Simkin, Assistant Director, Commercial Litigation Branch, Washington, D.C. Ellen Bonner, Assistant General Counsel, TRI-CARE Management Activity, Department of Defense, Aurora, CO, was of counsel.

Steven S. Diamond, Arnold & Porter LLP, Washington, D.C., for intervening defendant. Walter F. Zenner, Marc Stanislawczyk, Yohai Baisburd, Joseph M. Catoe, and Matthew H. Solomson were of counsel.

## ORDER

LETTOW, Judge.

In this post-award bid protest, on May 4, 2004, plaintiff ("PGBA") filed an Expedited Motion for Rehearing, Reconsideration or, in the Alternative, Final Judgment ("Pl.'s Mot."). The motion was directed to the Court's decision reported as *PGBA, LLC v. United States*, 60 Fed.Cl. 196 (2004), finding a substantial error in the procurement at issue, denying injunctive relief, and awarding bid proposal and preparation costs under 28 U.S.C. § 1491(b)(2). At the direction of the Court, on May 6, 2004, the government and the intervening defendant, Wisconsin Physicians Service Insurance Corporation ("WPS"), filed oppositions to this motion, and on that same day the Court conducted an evidentiary hearing to address the issues presented by the motion.[1] The Court has also granted leave to PGBA and WPS to file affidavits by company officers addressing such issues. The pending motion is plaintiff's second request that the Court reconsider its denial of injunctive relief and order a new evaluation of the various offerors' proposals.[2]

### A. Reconsideration of Denial of Injunctive Relief

TRICARE is a military health-care benefits program, focusing on dependents of active duty service members, retired service members, and dependents of retired service members. The contract at issue, known as the TRICARE Dual Eligible Fiscal Intermediary Contract or "TDEFIC," pertains to the provision of claims-processing and associated customer-support services for approximately 1.7 million beneficiaries under the TRICARE government health care system who are simultaneously eligible for coverage under Medicare. *See PGBA,* 60 Fed.Cl. at 198–99. The TRICARE system is administered by the TRICARE Management Activity ("TMA") within the Department of Defense. *Id.* at 198. Establishment of the TDEFIC is part of an on-going reorganization of the TRICARE system that is intended to enhance the healthcare being provided and to reduce the costs being incurred. *Id.* The TDEFIC contract replaces a system of subcontracts under which the benefits for dual-eligible beneficiaries are currently administered. *Id.* at 199.[3] The work to be performed under the TDEFIC contract is quite substantial—the price to be paid under the contract is nearly one-half billion dollars.

Plaintiff has argued that the Court's decision not to enjoin performance of the TDEFIC contract "reflects a clear misunderstanding about the TDEFIC schedule that affected much of the Court's analysis regarding the balance of harms." Pl.'s Mot. at 3. Seeking to dispel any sense of immediacy or exigent circumstances associated with the procurement at issue, PGBA asserts that the government may extend the existing contracts under which benefits are administered and has, in fact, already extended the transition date for at least one region. *Id.* at 2, 5. As PGBA would have it, the government may thus avoid "any harm to TMA from a delay occasioned by a reevaluation [of the proposals]." *Id.* at 2.

PGBA's argument is not persuasive. The factual situation in this case simply does not

---

1. The Court determined that an evidentiary hearing was necessary to establish a comprehensive factual record regarding the effects of granting or denying injunctive relief at this stage of contract implementation. The underlying administrative record was, necessarily, silent as to these factual issues related to relief. *See generally Esch v. Yeutter,* 876 F.2d 976, 991 (D.C.Cir. 1989). It is the responsibility of this Court, not the administrative agency, to provide for factual proceedings directed toward, and to find facts relevant to, irreparability of harms or prejudice to any party or to the public interest through grant or denial of injunctive relief. *See PGBA,* 60 Fed.Cl. at 204 n. 11.

2. The Court's prior reported decision incorporated a denial of PGBA's initial motion for reconsid-

eration filed after an opinion and order was rendered under seal. *See PGBA,* 60 Fed.Cl. at 222–23.

3. The TRICARE system has been "operated through a series of seven Managed Care Support ('MCS') contracts that cover eleven regions within the United States and around the world." *Id.* at 198. Services to dual-eligible beneficiaries were administered through sub-contracts to these MCS contracts. The new system would geographically consolidate coverage to three regions, each with its own contract, and provide separate contracts for TDEFIC and pharmacy services. *Id.* at 199.

support PGBA's weighing of the relevant factors to justify granting injunctive relief. At the evidentiary hearing conducted on May 6, 2004, Brian Rubin, a governmental official with TMA, testified about the efforts that the government and WPS have already undertaken in preparing for the implementation of the TDEFIC contract and in implementing a portion of that contract. Mr. Rubin explained that interrupting the transition process at this stage would almost certainly engender confusion among beneficiaries and health care providers and would result in a substantial burden on TMA. Evidentiary Hr'g Tr. ("Tr.") at 48, 55 (May 6, 2004). Mr. Rubin also testified that WPS has incurred significant expenses in relation to the transition and that a cancellation of the contract as awarded would require the government to reimburse such expenses and cause TMA to bear the burden of providing and administering such a reimbursement. Tr. at 49, 55.

As far as actual service to beneficiaries is concerned, Mr. Rubin explained that changing the transition date or installing a new contractor would likely result in minimal disruption of service for beneficiaries and health care providers. Tr. at 50, 55–56. Most claims are processed electronically, and a shift by electronic means to a new contractor could be readily put in place. Tr. at 49–50. However, for the minority of claims that are processed on a paper basis, Mr. Rubin stated that there is a high likelihood that problems would result. Tr. at 49–50, 55–56. Mr. Rubin also testified that one region is already covered by the TDEFIC contract, with the transition having occurred "on schedule" on April 1, 2004. Tr. at 18, 22–23. He explained that only a small percentage of dual-eligible beneficiaries (approximately two percent) are located within this region and that, accordingly, most beneficiaries remain subject to the original Managed Care Services contracts, which the government presumably has the option to extend. Tr. at 20, 26. Any such extension, however, would bring its own additional costs and administrative burdens, including reprinting of notices to beneficiaries and assigning TMA staff to consult with members of Congress and each branch of the military about the delay. Tr. at 28–29, 30, 46–49.

Additionally, Mr. Rubin testified that the beneficiaries within the region that has already transferred were previously covered by a subcontract held by WPS, indicating that the transition of this region required, in effect, a minimal disruption to TMA's customers. Tr. at 18–19. Such minimal disruption, however, does not accurately reflect the start-up efforts already conducted by WPS and TMA, including the development and testing of a new computer system for the processing of claims and payment requests. Tr. at 19, 38–45. The government specifically chose this smallest region for the first transition effort to test its systems and reduce problems with the remaining transitions. Tr. at 21, 45. For its part, PGBA has provided an affidavit from its president averring that PGBA has also "successfully completed" development of an interface with TMA's new computer systems. Horton Affidavit at ¶ 4 (May 11, 2004). However, Mr. Rubin testified that, even in light of PGBA's current experience processing claims and the fact that PGBA has already developed the relevant computer interface elements, an award of the TDEFIC contract to PGBA would engender a delay in transition of between four and eight weeks as well as an additional burden on TMA to "benchmark" and test the system for PGBA. Tr. at 42–45.

■ A motion for reconsideration under Rule 59 of the Rules of the Court of Federal Claims ("RCFC") may only be granted if the movant demonstrates "either that: (a) an intervening change in the controlling law has occurred, (b) evidence not previously available has become available, or (c) that the motion is necessary to prevent manifest injustice." *Bannum, Inc. v. United States,* 59 Fed.Cl. 241, 243 (2003). PGBA has argued that reconsideration is necessary in this instance to correct alleged mistakes of fact that have resulted in manifest injustice. The Court cannot accept this premise. The facts of this case, particularly when viewed in light of PGBA's early strategic decision not to seek a preliminary injunction to forestall the government and WPS from continuing with implementation of the contract, justify neither a finding of manifest injustice against PGBA nor a change of the Court's determi-

nation that the balance of harms in this instance weighs in favor of permitting the government and WPS to continue implementing the TDEFIC contract as awarded. Accordingly, PGBA's request for reconsideration is denied.

### B. Final Judgment

 In its motion, PGBA requests that, in the event the Court denies its request for reconsideration, "the Court enter final judgment in this matter so that an immediate appeal can be pursued." Pl.'s Mot. at 3. The Court's Order and Opinion, as originally issued under seal on March 31, 2004, and as reissued on April 22, 2004, in conjunction with denial of PGBA's first motion for reconsideration, was an order denying PGBA's request for injunctive relief. *See PGBA,* 60 Fed.Cl. at 220–22. Such an order may be appealed on an interlocutory basis to the Court of Appeals for the Federal Circuit. *See* 28 U.S.C. §§ 1292(c)(1), 1295(a)(3); *PIN/NIP, Inc. v. Platte Chemical Co.,* 304 F.3d 1235, 1242 (Fed.Cir.2002) (exercising jurisdiction pursuant to 28 U.S.C. §§ 1292(a)(1) and 1292(c)(1) to review a district court's grant of a permanent injunction in patent case). *See also National R.R. Passenger Corp. v. ExpressTrak, L.L.C.,* 330 F.3d 523, 527 (D.C.Cir.2003) ("Although [Section 1292(a)(1)] is typically invoked to appeal preliminary injunctions, it can be invoked to appeal permanent injunctions that are interlocutory in nature."); *Perfect Fit Indus., Inc. v. Acme Quilting Co.,* 618 F.2d 950, 952 n. 4 (2d Cir.1980) (exercising jurisdiction under Section 1292(a)(1) to review dismissal of complaint requesting permanent injunction, even though counterclaims remained pending). *But see Plymouth County Nuclear Info. Comm., Inc. v. Boston Edison Co.,* 655 F.2d 15, 18 (1st Cir.1981) (interlocutory order striking claim for permanent injunctive relief was not appealable as of right). In short, PGBA already possesses the ability to appeal the Court's denial of injunctive relief. Nonetheless, as a prudential measure to ensure that the Court's decision and order are immediately appealable in this case of such significance to the military health-care program, the Court determines that there is no just reason for delay in entering final judg-

ment as to the Court's denial of injunctive relief to PGBA. Accordingly, the Court grants PGBA's request for a final judgment pursuant to RCFC 54(b). PGBA retains its awarded entitlement to bid preparation and proposal costs, which remain to be determined via future proceedings.

### C. Conclusion

Plaintiff's Expedited Motion for Rehearing, Reconsideration or, in the Alternative, Final Judgment, is denied in part and granted in part. PGBA's request for reconsideration is denied. PGBA's request for a final judgment is granted. The Clerk shall enter final judgment pursuant to RCFC 54(b) denying PGBA's claim for injunctive relief.

It is so ORDERED.