# In the United States Court of Federal Claims

No. 12-882C

(Filed Under Seal: May 2, 2013)
(Reissued: May 9, 2013)

|  |  |  |
|---|---|---|
| | ) | |
| **KWV, INCORPORATED,** | ) | Pre-award bid protest; challenge to |
| | ) | agency's disqualification of veteran- |
| **Plaintiff,** | ) | owned small business from participating |
| | ) | in VA's Veterans First Contracting |
| **v.** | ) | Program; application of "control" within |
| | ) | the meaning of 38 C.F.R. § 74.4 |
| **UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

William M. Weisberg, Law Offices of William Weisberg, PLLC, Tysons Corner, VA, for plaintiff. With him on the briefs were Joyce L. Tong Oelrich and Liana W. Yung, Bryan Cave LLP, Washington, D.C.

Alexis J. Echols, United States Department of Justice, Washington, D.C., for defendant. With her on the briefs were Stuart F. Delery, Principal Deputy Assistant Attorney General, Civil Division, and Jeanne E. Davidson, Director, and Kenneth M. Dintzer, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. Of counsel were Dennis Foley, Counselor to the Assistant General Counsel, and Aleia Barlow, General Attorney, Office of the General Counsel, United States Department of Veterans Affairs.

## OPINION AND ORDER[1]

LETTOW, Judge.

This pre-award bid protest is before the court on plaintiff's motion for judgment upon the administrative record and the government's cross-motion for judgment. On February 7, 2012, plaintiff, KWV, Inc. ("KWV") was certified for inclusion on the list of qualified veteran-owned small businesses ("VOSBs") eligible to participate in the Veteran's First Contracting Program.

---

[1]Because this opinion and order might have contained confidential or proprietary information within the meaning of Rule 26(c)(1)(G) of the Rules of the Court of Federal Claims ("RCFC") and the protective order entered in this case, it was initially filed under seal. The parties were requested to review this decision and to provide proposed redactions of any confidential or proprietary information. No redactions were requested.

This program designates VOSBs and service-disabled veteran-owned small businesses ("SDVOSBs") as priority bidders for certain contracting opportunities. After the Department of Veterans Affairs' ("VA's") Center for Veterans Enterprise ("CVE") qualified KWV for listing in 2012, KWV bid on and ostensibly won an award of a contract as a VOSB. Thereafter, a losing bidder lodged a protest against KWV's qualifications, which protest resulted in an evaluation by VA's Office of Small and Disadvantaged Business Utilization ("OSDBU"). OSDBU ultimately issued a decision in favor of the protestor, holding that KWV "d[id] not meet the status requirements of a SDVOSB [sic] concern," and that it was ineligible for the challenged award and future awards under the Veterans First Contracting Program. AR 570 (Letter from Thomas Leney to James Maron (Oct. 24, 2012)).[2]

On December 14, 2012, KWV filed its complaint in this court, seeking reinstatement onto the VOSB list and restoration of eligibility for Veterans First projects, as well as an injunction barring VA from awarding contracts upon solicitations on which KWV had submitted bids. The court granted a temporary restraining order on December 21, 2012, and extended it on January 4, 2013, temporarily rescinding VA's delisting of KWV from the VOSB database. Subsequently, the court granted a preliminary injunction setting aside VA's delisting of KWV and restoring it to eligibility for VA's Veterans First Contracting Program. *See KWV, Inc. v. United States*, 108 Fed. Cl. 448 (2013). Proceedings on the merits were accelerated, with KWV moving for judgment on the administrative record, and the government cross-moving for the same. A hearing was held on these motions on March 27, 2013.

## FACTS[3]

KWV is a Rhode Island close corporation organized under the Rhode Island General Laws § 7-1.2-1701. Compl. ¶ 17. Ownership of KWV is split between James Maron, who owns 60 percent of the issued and outstanding shares, and his two sons and a granddaughter, who own the remaining 40 percent. Compl. ¶ 18. Mr. Maron is a veteran of the United States Army Corps of Engineers who served in the Korean War from 1952 until his honorable discharge in 1954. Compl. ¶ 13. He has more than 50 years of experience in the construction industry, 30 of which

---

[2]"AR __" refers to the administrative record certified by VA and filed with the court in accord with RCFC 52.1(a).

[3]The recitations that follow constitute findings of fact by the court drawn from the administrative record of the procurement, as well as the parties' evidentiary submissions regarding standing, prejudice, and equitable factors. *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005) (bid protest proceedings "provide for trial on a paper [administrative] record, allowing fact-finding by the trial court"); *PGBA, LLC v. United States*, 60 Fed. Cl. 567, 568 n.1 (2004) ("It is the responsibility of th[e] [c]ourt, not the administrative agency [conducting the procurement], to provide for factual proceedings directed toward, and to find facts relevant to, irreparability of harms or prejudice to any party or to the public interest through grant or denial of injunctive [or declaratory] relief."), *aff'd*, 389 F.3d 1219 (Fed. Cir. 2004); *see also Holloway & Co. v. United States*, 87 Fed. Cl. 381, 391 n.12 (2009).

were spent as a contractor, and studied building construction at the Rhode Island School of Design for four years. Compl. ¶¶ 15-17; AR 434.

Currently, Mr. Maron's sole business endeavor is KWV, a company he founded and self-certified as a VOSB in 2008 as permitted by the Veterans Benefits, Health Care, and Information Technology Act of 2006 ("Veterans Benefits Act"), Pub. L. No. 109-461, tit. V, 120 Stat. 3403, 3425 (codified at 38 U.S.C. §§ 8127-28). *See* AR 508-09; AR 513. That Act requires the Secretary of Veterans Affairs to "give priority to a small business concern owned and controlled by veterans, if such business concern also meets the requirements of that contracting preference." 38 U.S.C. § 8128(a). This preference applies only to procurements by VA. *See Angelica Textile Servs., Inc. v. United States*, 95 Fed. Cl. 208, 222 (2010). As a self-certified VOSB, KWV won and performed two or three projects for VA. *See* AR 508-09. In 2010, VA shifted from a self-certification scheme to a verification program, and KWV accordingly applied for verification as a qualified VOSB and inclusion in the VA VetBiz Vendor Information Pages ("VIP"). Compl. ¶ 19. Although KWV's application was initially denied on September 22, 2011, it was given an opportunity to cure the perceived defects in the application and request reconsideration, which it did on October 12, 2011. AR 455-94 (KWV's Request for Reconsideration). The cited reason for the original denial of KWV's application was that KWV's corporate documents provided for a controlling board composed of a majority of non-veteran directors. AR 451-52. In its reconsideration application, KWV demonstrated that the company was, in fact, controlled by Mr. Maron as the majority shareholder, and that it had amended its corporate documents to reflect that circumstance. AR 455-94. On February 7, 2012, after reviewing KWV's revised documentation, conducting an investigation of the company, and performing a site visit and interviews, CVE approved KWV's application for designation as a VOSB and inclusion in the VIP database for one year. AR 495-515.2, 516-17 (Letter from Dan Friend to Bruce St. John (Dec. 19, 2011)) (CVE Verification Letter).

At all relevant times during the events underlying this action, Mr. Maron has divided his time between Florida and Rhode Island, spending just under half of every year in Rhode Island and the remainder in Florida. AR 540. He is a legal resident of Florida. *Id.* Mr. Maron was so situated both during the CVE certification process and previously when KWV was a self-certified VOSB.

During the period of self-certification, KWV had secured Contract Nos. VA 241-C-1312 and VA523-C07071, AR 508-09, and became eligible to bid on posted solicitations for work on the Boston Health Care System ("BHS") project in 2012 after its VOSB certification was granted by CVE. *See* Compl. ¶¶ 1, 45. KWV successfully bid on a BHS task order, No. VA241-12-J-1036 (part of Solicitation No. VA-241-12-R-0563), and was awarded that task order on July 11, 2012. Compl. Ex. 4 (Award Letter from Athena Jackson to Thomas Maron (July 11, 2012)). Following this award, a competitor, Alares, LLC ("Alares"), filed a formal protest with VA against KWV. This protest challenged KWV's status as a VOSB, alleging that Mr. Maron was not truly in control of the company. AR 518. As evidence of this lack of control, Alares pointed to Mr. Maron's Florida residency during the bare majority of each calendar year. AR 519. Alares posited that Mr. Maron's two non-veteran sons, David and Thomas Maron, were effectively in control of KWV. *Id.*

3

Procedurally, Alares' agency protest was considered by OSDBU, which initiated an investigation into KWV based upon the protest allegations. This investigation was conducted entirely through review of documents; OSDBU did not conduct a site visit, nor did it conduct any interviews with Mr. Maron or any other employee at KWV. Compl. ¶ 53. KWV was given notice of the protest and responded by submitting a letter of explanation, Mr. Maron's tax statements, a deed to a Rhode Island condominium, recent utility bills in his name, KWV's By-Laws and Operating Agreement, a copy of the original VA verification letter, and photographs of KWV's headquarters in Rhode Island. AR 538-66. The letter of explanation advised that Mr. Maron resided just over half the calendar year in Florida, with the remainder of the year being spent at the condominium in Rhode Island. AR 540. KWV's response averred that, while Mr. Maron was in Florida, he continued to manage the day-to-day business of KWV by telephone, e-mail, and other electronic means, and that he traveled to Rhode Island when necessary to attend meetings and conferences. *Id.*

On October 24, 2012, OSDBU issued a decision concluding that Mr. Maron did not maintain sufficient control over the day-to-day management of KWV, and it disqualified KWV from participation in the Veterans First Contracting Program. AR 568-71.[4] The protested contractual award to KWV was terminated, and all of KWV's pending proposals for other VOSB projects were disqualified. *See* AR 571 ("[KWV] cannot submit another offer as a VOSB or SDVOSB on a future VOSB or SDVOSB procurement under [38 C.F.R. Part 74], as applicable, unless it demonstrates to VA's Center for Veterans Enterprise that it has overcome the reasons for the determination of ineligibility, if it is able, by applying for and receiving verified status in accordance with 38 C.F.R. Part 74."); *see also* Compl. ¶¶ 58-74.

On December 14, 2012, KWV filed its pre-award bid protest in this court, characterizing OSDBU's determination as unreasonable and contrary to law, and seeking reinstatement to the VIP database as a VOSB. The court granted a temporary restraining order and then a preliminary injunction, setting aside OSDBU's decision rendering KWV ineligible for awards of contracts as a VOSB and restoring KWV to the VIP database. *See KWV*, 108 Fed. Cl. at 458. As part of the preliminary injunctive relief, the court extended KWV's period of eligibility by 72 days, until April 22, 2013, to account for days lost from the year of eligibility during the period of disqualification prior to the preliminary injunction. *Id.*

## JURISDICTION

Jurisdictionally, KWV invokes the third prong of 28 U.S.C. § 1491(b)(1), claiming a violation of statute or regulation in connection with a procurement or a proposed procurement. The pertinent provision was added to the Tucker Act by the Administrative Dispute Resolution Act, Pub. L. No. 104-320, § 12, 110 Stat. 3870, 3874 (Oct. 19, 1996), and provides:

---

[4]This decision was framed in terms of KWV's having been designated a SDVOSB, rather than a VOSB. AR 568. This reference was apparently a clerical error, as KWV has never claimed to be (nor did Alares contest its status as) a SDVOSB. OSDBU issued a correction on November 19, 2012, acknowledging this error and clarifying that KWV had previously been certified as a VOSB. AR 567.

[T]he United States Court of Federal Claims . . . shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or *any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.* . . . [T]he United States Court of Federal Claims . . . shall have jurisdiction to entertain such an action without regard to whether suit is instituted before or after the contract is awarded.

28 U.S.C. § 1491(b)(1) (emphasis added); *see also Rothe Dev., Inc. v. United States Dep't of Def.*, 666 F.3d 336, 338 (5th Cir. 2011) ("[T]he Court of Federal Claims now retains exclusive jurisdiction over 'action[s] by an interested party' 'objecting to . . . any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.'" (quoting 28 U.S.C. § 1491(b)(1))).

KWV's position is that VA's inconsistent application of 48 C.F.R. § 819.307 (governing VOSB status protests) and 38 C.F.R. Part 74 (VA's "Veterans Small Business Regulations") amounts to a violation of its own procurement regulations. Section 74.3 of 38 C.F.R. Part 74 details the standards for CVE's evaluation of VOSB applicants, and these eligibility standards are explicitly incorporated into the Veterans Affairs Acquisition Regulation System ("VAAR") provisions which govern SDVOSB and VOSB status protests with OSDBU. *See* 48 C.F.R. § 819.307(c).[5] By noting inconsistencies in VA's application of identical regulations at different stages of the procurement process, KWV alleges violation of a regulation in connection with a procurement, properly invoking this court's bid protest jurisdiction. *See RAMCOR Servs. Group, Inc. v. United States*, 185 F.3d 1286, 1289 (Fed. Cir. 1999) ("§ 1491(b) . . . does not require an objection to the actual contract procurement. . . . As long as a statute has a connection to a procurement proposal, an alleged violation suffices to supply jurisdiction."); *Angelica Textile Servs.*, 95 Fed. Cl. at 215 ("The phrase 'in connection with' is very sweeping in scope."

## STANDARDS FOR DECISION

The court reviews a challenge to an agency's actions in connection with a procurement under the Administrative Procedure Act, 5 U.S.C. § 706. *See* 28 U.S.C. § 1491(b)(4) ("In any action under this [S]ubsection, the courts shall review the agency's decision pursuant to the standards set forth in [S]ection 706 of title 5."). The court may set aside the agency decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), assuming the criteria for equitable relief are satisfied, *see PGBA, LLC v. United States*, 389 F.3d 1219, 1224-28 (Fed. Cir. 2004). "[If] the procurement official's decision lacked a rational basis; or . . . the procurement procedure involved a violation of regulation or procedure," then the court may rescind the agency's decision. *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001); *see also Superior Helicopter, LLC v. United States*, 78 Fed. Cl. 181, 187 (2007).

---

[5]The VAAR are set out in 48 C.F.R. Parts 801-873.

5

In conducting its review, the court may not "substitute its judgment for that of the agency," *Keeton Corrs., Inc. v. United States*, 59 Fed. Cl. 753, 755 (2004) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *abrogated in part by Califano v. Sanders*, 430 U.S. 99, 105 (1977) (abrogating *Overton Park* to the extent it recognized the APA as an independent grant of subject matter jurisdiction)). It may only set aside the agency's decision if it determines that the "decision was [not] based on a consideration of the relevant factors [or] there has been a clear error of judgment." *Overton Park*, 401 U.S. at 416.

Upon a showing of such a clear error of judgment, the court may award "declaratory and injunctive relief" to an injured protestor. 28 U.S. § 1491(b)(2). Monetary relief is "limited to bid preparation and proposal costs." *Id.* The determination of whether a permanent injunction is appropriate is made by the court after consideration of the four factors traditionally applied respecting equitable relief. *See Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009) (citing *PGBA*, 389 F.3d at 1228-29). The factors are quoted *infra*, at 9.

## ANALYSIS

### A. *Statutory and Regulatory Framework*

At the inception of the Veterans First Contracting Program in 2007, VA allowed VOSB and SDVOSB entities to self-certify themselves for registration in the VIP database. With the adoption of statutory amendments now set forth at 38 U.S.C. § 8127(e) and (f), which detail the Secretary of the Department of Veterans Affairs' responsibilities for maintaining the VIP database, self-certification was replaced by a certification process administered by CVE. *See* VA Acquisition Regulation: Supporting Veteran-Owned and Service-Disabled Veteran-Owned Small Businesses, 74 Fed. Reg. 64,619-01 (Dec. 8, 2009) (codified at 48 C.F.R. Parts 802, 804, 808, 809, 810, 813, 815, 817, 819 and 852) (effective Jan. 7, 2010); 75 Fed. Reg. 6098-01 (Feb. 8, 2010) (codified at 38 C.F.R. Part 74 (effective Feb. 8, 2010). Certification through CVE became mandatory, even for VOSBs and SDVOSBs like KWV that had previously self-certified without incident. VIP eligibility is governed by 38 C.F.R. Part 74, but CVE-approved certifications may be challenged by way of an agency-level bid protest, as provided in 48 C.F.R. § 819.307. Such agency-level protests are handled by OSDBU. *Id.*

Both the initial certification by CVE and any protest-initiated review by OSDBU are governed by the same standards respecting ownership and control. Those standards are set out in Part 74, which in turn are incorporated by reference into Part 819 for "ownership and control issues." 48 C.F.R. § 819.307. Section 74.4(a) defines control as "the day-to-day management and long-term decision-making authority for the VOSB." Specifically, control "include[s] both the strategic policy setting exercised by boards of directors and the day-to-day management and administration of business operations . . . . Individuals managing the concern must have managerial experience of the extent and complexity needed to run the concern." 38 C.F.R. § 74.4(b).

CVE is empowered to revoke certification of VOSB status if it "believes that a participant's verified status should be cancelled prior to expiration of its eligibility term." 38 C.F.R. § 74.22(a). In revocation proceedings, CVE must provide notice to the concern, which is

then allowed thirty days to respond to the issues identified by CVE. 38 C.F.R. § 74.22(a) and (b). Thereafter, CVE must issue a decision describing the specific facts and reasoning which drive the result. 38 C.F.R. § 74.22(c). The concern may administratively appeal a decision by CVE. 38 C.F.R. § 74.22(e).

Consideration of VOSB status through a bid protest, rather than via CVE reconsideration, is procedurally less defined. The VAAR states that protests "must be in writing and state specific grounds for the protest." 48 C.F.R. § 819.307(c)(1). Timing constraints are put on the protestor (protests must be filed on or before the fifth business day after bid opening, or notification by the contracting officer of the successful offeror), but no timelines are set for consideration of the protest by OSDBU or for the protested awardee to respond. *See* 48 C.F.R. § 819.307(c)(2). Indeed, opportunity to respond to a protest is not explicitly provided in the regulation; however, basic due process considerations must apply, and the protested awardee is in practice given an opportunity to respond. *See Miles Constr., LLC v. United States*, 108 Fed. Cl. 792, 796, 803-05 (2013) (noting that an awardee was given a week by OSDBU to respond to a protest and approving OSDBU's discretion to expand the grounds for the protest beyond those raised by the protestor, but ruling that the awardee had to be given notice of the expanded grounds under the due process protections afforded by 5 U.S.C. § 555).

### B. *OSDBU's Action*

KWV contends that OSDBU's decision to revoke its VOSB status was arbitrary and contrary to law because of the inconsistent application of functionally identical guidelines by CVE and OSDBU. *See* Pl.'s Mem. in Support of Mot. for Judgment on the Admin. Record ("Pl.'s Mem.") at 19. The government responds that there is no inconsistency between the CVE and OSDBU determinations because OSDBU had access to more information than did CVE — namely, the fact that Mr. Maron spent a significant portion of each year in Florida. Def.'s Mot. for Judgment upon the Admin. Record and Resp. to Pl.'s Mot. for Judgment upon the Admin. Record ("Def.'s Cross-Mot.") at 16.

OSDBU conducted a review which, in comparison to that performed by CVE, was perfunctory. CVE had analyzed KWV's corporate and business documentation and conducted a site visit and an in-person interview with Mr. Maron and other employees. *See* AR 495-515.2 (Letter from Dan Friend to Bruce St. John (Dec. 19, 2011)); AR 1-159 (Initial Application for CVE Verification). OSDBU, however, confined its consideration to review of a paper record consisting of CVE's result and Alares' protest, plus Mr. Maron's response. *See* Hr'g Tr. 23:8 to 24:3 (Mar. 27, 2013).[6]

Residency is not identified as an element of "control" for purposes of Part 74. Nonetheless, OSDBU focused specifically and solely on that fact as being dispositive as a matter of law, stating that "OSDBU finds that [Mr. Maron is] unable to manage the day-to-day operations of KWV while residing in Florida." AR 570. In its decision, OSDBU did not address

---

[6]Mr. Maron's residency and time in Florida versus Rhode Island are not disputed. For purposes of this decision, the court will assume without deciding that his residential circumstances were not known to CVE.

any of those factors that 38 C.F.R. § 74.4 does identify as being relevant to control, *viz.*, "strategic policy setting," "day-to-day management and administration of business operations," and "managerial experience of the extent and complexity needed to run the concern." 38 C.F.R. § 74.4(b). Apart from addressing residency, OSDBU's decision largely consists of reciting regulatory provisions of Parts 819 and 74 and Alares' allegations. AR 568-71. OSDBU's reliance on Mr. Maron's residency as a basis for revoking VOSB status in effect treats that fact as requiring a decision as a matter of law, wholly apart from other factors.

As to law, OSDBU cites a decision by the Small Business Administration's ("SBA's") Office of Hearings and Appeals ("OHA"). *See* AR 570 (citing *Matter of First Capital Interiors, Inc.*, SBA No. VET-112, at 8, 2007 WL 2438401 (2007)). OSDBU's reliance on this case as support for treating residency to be dispositive is misplaced. *First Capital* is distinguishable from the present case in several significant respects: (1) the *First Capital* veteran did not have prior management experience, while Mr. Maron does; (2) the *First Capital* veteran maintained two other jobs, while KWV is Mr. Maron's sole business endeavor; (3) the *First Capital* veteran permanently resided three time zones away from the company in question, while Mr. Maron resides at all times in the same time zone, and for almost half of the year, the same state and locality, as KWV's sole office. *First Capital* , 2007 WL 2438401, at *1, **7-8. Instructively, SBA in *First Capital* had explicitly rejected the notion that distance alone is determinative of control. *Id*. at *7.

In contrast to OSDBU's approach, the CVE reviewer had addressed a range of considerations bearing on management and control. He concluded that Mr. Maron was responsible for "overseeing projects," "came to the office as needed," and was "always in communication" with KWV. AR 515.1-15.2 (Handwritten Notes of CVE Reviewer). Mr. Maron worked forty hours a week, whereas his non-veteran sons (whom Alares alleged to have been managing KWV in fact) were both noted as working fewer than ten hours each week for KWV. *Id.* In this respect, the CVE reviewer specifically noted that Mr. Maron's son, David, had "[n]o bid involvement" and "no day-to-day management" responsibilities. AR 515.2.

Additionally, KWV's response to the Alares protest reiterated Mr. Maron's involvement in the day-to-day management of KWV even while he was present in Florida, citing methods of communication such as telephone, e-mail, and other electronic means. AR 538-66 (KWV's Response to Protest). OSDBU did not take those means of communication and control into account in focusing solely on residency. During the argument on the pending motions, the government's counsel endeavored to address this gap by noting the lack of "any evidence supporting [KWV's] position that Mr. Maron used telecommunication to control the day-to-day operations of the business" during the times he was in Florida rather than Rhode Island. Hr'g Tr. 17:19-22. However, OSDBU did not express any interest in examining the details of Mr. Maron's communications. In short, OSDBU never purports in its decision to have investigated or determined the actual level of control exercised by Mr. Maron.

Aside from OSDBU's misplaced reliance on Mr. Maron's residency as the determinative factor for control, there is nothing in the administrative record to suggest that Mr. Maron was not exercising sufficient control over KWV. In the circumstances, the court concludes that the government has not "'provided a coherent and reasonable explanation of its exercise of

discretion,'" *Impresa Construzioni Geom. Domenico Garufi*, 238 F.3d at 1333 (quoting *Latecoere Int'l, Inc. v. United States Dep't of the Navy*, 19 F.3d 1342, 1356 (11th Cir. 1994)), nor articulated a "'rational connection between the facts found and the choice made,'" *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)). Accordingly, the court finds that OSDBU's determination disqualifying KWV was arbitrary and capricious, and not in accordance with VA's regulations.

## C. *Prejudice*

"To prevail in a bid protest, a disappointed offeror must show both significant error in the procurement process and prejudice to its posture in the process." *PGBA, LLC v. United States*, 60 Fed. Cl. 196, 203 (2004) (citing *Advanced Data Concepts, Inc. v. United States,* 216 F.3d 1054, 1057 (Fed. Cir. 2000)), *aff'd*, 389 F.3d 1219. KWV must demonstrate a "substantial chance" that it would have received contractual awards absent the error. *Banknote Corp. of Am. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004). This aspect of the analysis may be dispatched easily; KWV was, in fact, awarded a task order as a VOSB. Compl. Ex. 4 (Award Letter from Athena Jackson to Thomas Maron (July 11, 2012)). Moreover, when OSDBU revoked KWV's VOSB status, it was disqualified from the Veterans First Contracting Program and lost the opportunity to bid on other contracts and task orders. *See* AR 571 ("[KWV] cannot submit another offer as a VOSB or SDVOSB on a future VOSB or SDVOSB procurement under [38 C.F.R. Part 74]." KWV has demonstrated sufficient prejudice.

## D. *Relief*

When determining whether to issue a permanent injunction, "the court must consider whether (1) the plaintiff has succeeded on the merits, (2) the plaintiff will suffer irreparable harm if the court withholds injunctive relief, (3) the balance of hardships to the respective parties favors the grant of injunctive relief, and (4) the public interest is served by a grant of injunctive relief." *Centech Grp.*, 554 F.3d at 1037. If all four criteria are satisfied, the court may award declaratory or injunctive relief that is appropriate in the circumstances. *See* 28 U.S.C. § 1491(b)(2).

KWV has succeeded on the merits of its protest, and it has demonstrated that revocation of its status as a VOSB constitutes irreparable harm by barring it from participation in the Veterans First Contracting Program. The government counters that VA will be harmed by a grant of injunctive relief to KWV because setting aside the OSDBU determination will "compromis[e] the integrity of the VA procurement process" and "frustrate[] the purpose of the Veterans First set-aside program." Def.'s Cross-Mot. at 23. To the contrary, however, setting aside the OSDBU decision will eliminate an arbitrary and capricious precedent and serve the purpose of the Veterans First set-aside program — that of providing eligible veterans with priority contracting opportunities. The balance of hardships thus weighs in favor of granting a permanent injunction. Correlatively, the public has a strong interest in a fair and competitive procurement process, which is best served by ensuring that the government complies with regulations governing procurement programs. *See Wackenhut Servs. Inc. v. United States*, 85 Fed. Cl. 273, 312 (2008); *Hunt Bldg. Co. v. United States*, 61 Fed. Cl. 243, 280 (2004). By

assuring that OSDBU decisions comport with the regulations meant to be applied by VA in determining VOSB eligibility, that public interest will be served.

**CONCLUSION**

For the reasons stated, KWV's motion for judgment on the administrative record is GRANTED IN PART, and the government's motion to dismiss or, in the alternative, cross-motion for judgment on the administrative record is DENIED. OSDBU's decision dated October 24, 2012, rendering KWV ineligible for awards of contracts as a VOSB, is set aside. VA shall restore KWV to the VIP database as an eligible VOSB concern for the remainder of its period of eligibility.[7] The clerk shall enter judgment in accord with this disposition.

No costs.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Judge

---

[7]In granting a preliminary injunction, the court extended KWV's year-long verified eligibility to April 22, 2013, to account for the days it was wrongfully excluded from the VIP database. *See KWV*, 108 Fed. Cl. at 458. Although KWV's initial certification was granted with a one-year term, AR 516, the controlling regulation has since been amended to reflect a two-year duration for all verifications, *see* 38 C.F.R. § 74.15(a) (effective June 27, 2012). Accordingly, the court reinstates KWV's VOSB status and extends eligibility to an expiration date of April 22, 2014.